**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**FRITH MALIN**                                                                           **CIVIL ACTION**

**VERSUS**                                                                                **NO. 16-16465**

**ORLEANS PARISH COMMUNICATIONS DISTRICT**                        **SECTION "B"(4)**

**ORDER AND REASONS**

**I.   NATURE OF MOTION AND RELIEF SOUGHT**

Before the court is Defendant Orleans Parish Communications District's "Motion to Dismiss for Failure to State a Claim" (Rec. Doc. 11), "Plaintiff's Memorandum in Opposition to Motion to Dismiss for Failure to State a Claim" (Rec. Doc. 12), "Reply Memorandum in Support of Defendant's Motion to Dismiss for Failure to State a Claim" (Rec. Doc. 16), Defendant Orleans Parish Communications District's "Motion to Dismiss for Failure to State a Claim in Original, First and Second Supplemental and Amending Complaint" (Rec. Doc. 18), "Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss for Failure to State a Claim in Original, First and Second Supplemental and Amending Complaint" (Rec. Doc. 19), "Reply Memorandum in Support of Defendant's Motion to Dismiss for Failure to State a Claim in Original, First and Second Supplemental and Amending Complaint" (Rec. Doc. 22), Orleans Parish Communications District's "Motion to Dismiss for Failure to State a Claim in Original, First, Second and Third

1

Supplemental and Amending Complaint" (Rec. Doc. 30) and "Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss for Failure to State a Claim in Original, First, Second and Third Supplemental and Amending Complaint" (Rec. Doc. 31).

**IT IS ORDERED** that the Defendant's Motions to Dismiss (Rec. Docs. 11, 18, 30) are **GRANTED.**

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff, Frith Malin, worked at the Orleans Parish Communications District ("OPCD") for eight years until the OPCD fired her on July 29, 2016 (Rec. Doc. 1). Plaintiff held the position of Deputy Director for the OPCD on the date of her termination (Rec. Doc. 1).

On June 24, 2016, Stephen Gordon, the OPCD Director, sent an email to all OPCD employees, announcing that a current OPCD board member, Andy Kopplin, had been named CEO of the Greater New Orleans Foundation (Rec. Doc. 1). On the same date Plaintiff replied to Gordon's email and stated "I'm sure he will do just as good a job bleeding all these funds dry, just as he has done with the City. I'm willing to bet he starts charging a higher admin/maintenance fee to the entities that have funds there. I normally donate to Franklin via this fund, but won't do that again." (Rec. Doc. 1). Plaintiff intended to only send this message to Gordon but inadvertently replied all (Rec. Doc. 1). On June 27, 2016, the OPCD suspended the Plaintiff from her employment while it conducted

2

an internal investigation regarding her email response (Rec. Doc. 1). The OPCD appointed Jeanne Hobson, the OPCD Human Resources Manager, to conduct the internal investigation and on July 15, 2016 she issued a report entitled "Administrative Investigation of Frith Malin, Deputy Director." (Rec. Doc. 1). In her report Jeanne Hobson recommended that the OPCD terminate Plaintiff and pursuant to her recommendation the OPCD fired Plaintiff on July 29, 2016 (Rec. Doc. 1).

Plaintiff alleges that in the six or seven months prior to her termination Jeanne Hobson created a sexually hostile work environment for her through discussing non-monogamous heterosexual sexual encounters (Rec. Doc. 29). Plaintiff stated that she then complained about these sexual comments to Stephen Gordon, the OPCD Director (Rec. Doc. 29). Plaintiff alleges that her termination was in retaliation for complaining against Ms. Hobson (Rec. Doc. 6).

Plaintiff filed a "Complaint with Jury Demand" (Rec. Doc. 1), "Plaintiff's First Supplemental and Amending Complaint" (Rec. Doc. 6), "Plaintiff's Second Supplemental and Amending Complaint" (Rec. Doc. 17) and "Plaintiff's Third Supplemental and Amending Complaint" (Rec. Doc. 29). Plaintiff brings claims under (1) Section 1983, violation of the First Amendment; (2) Title VII retaliation; and (3) the Louisiana Whistleblower Statute.

## III. FACTUAL AND LEGAL FINDINGS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. *See Lowrey v. Tex. A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir.1997) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982)).

When reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)(quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009))(internal quotation marks omitted). The Supreme Court in *Iqbal* explained that *Twombly* promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1950. First, courts must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Legal conclusions

4

"must be supported by factual allegations." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949.

Upon identifying the well-pleaded factual allegations, courts "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id*. at 1950. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### A. FIRST AMENDMENT CLAIMS

In the Fifth Circuit in order to establish a prima facie case of First Amendment retaliation, a Plaintiff must demonstrate that she (1) suffered an adverse employment decision; (2) her speech involved a matter of public concern; (3) her interest in commenting on matters of public concern outweighs the Defendant's interest in promoting efficiency; and (4) her speech motivated the adverse employment decision. *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001). Nonetheless, the United States Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking

as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

This Court finds that the Plaintiff's First Amendment retaliation claim should be dismissed. The facts alleged do not satisfy the second requirement to establish a prima facie case. Plaintiff argues that her speech is protected because she sent the email "as a private citizen regarding a matter of public concern, and not as part of her official duties as the Deputy Director of the OPCD" (Rec. Doc. 1). However this Court has previously ruled that "*Garcetti* thus shifted the analytical focus from the content of speech to the role the speaker occupied when he said it." *Hartman v. City of New Orleans*, Case NO.:12-1929, 2014 U.S. Dist. LEXIS 6277 at*9 (E.D. La. Jan. 16, 2014) (*internal quotations and citations omitted*). The Fifth Circuit has held that when "when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job." *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008). Conversely, "if however a public employee takes his job concerns to persons outside the work place in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen." *Hartman*, 2014 U.S. Dist. LEXIS 6277, at*10 (*internal quotations and citations omitted*).

Here, the Plaintiff, while employed as an OPCD Deputy Director, sent an organization wide internal email correspondence stating "I'm sure he will do just as good a job bleeding all these funds dry, just as he has done with the City. I'm willing to bet he starts charging a higher admin/maintenance fee to the entities that have funds there. I normally donate to Franklin via this fund, but won't do that again." (Rec. Doc. 1). There is no allegation that Plaintiff shared this information with anyone outside of the workplace. Plaintiff's allegations referenced in the complaint reflect that her communication was in response to a change in the status of an OPCD board member, Andy Kopplin (Rec. Do. 1). Plaintiff used her work email to transmit her message regarding Andy Kopplin (Rec. Doc. 1). Furthermore, Plaintiff's response was sent only to her fellow co-workers who had received the work related email and it was not distributed to any third parties (Rec. Doc. 1). Plaintiff's speech was made in her capacity as an OPCD official and not as a private citizen.

Furthermore, the content of the speech was not a matter of public concern. The Fifth Circuit has held that "speech is not on a matter of public concern if it is made solely in furtherance of a personal employer-employee dispute. Typically, an employee speaks in furtherance of his personal employer-employee dispute when he discusses personnel matters directly impacting his job or criticizes other employees or supervisors' job performance." *Salge*

*v. Edna Indep. Sch. Dist.,* 411 F.3d 178, 187-188 (5th Cir. 2005). Plaintiff's criticism of Andy Kopplin's board performance in her organization wide email constitute the type of employer-employee dispute contemplated by the Fifth Circuit. The Fifth Circuit further explained, "if releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance, the content of the speech may be public in nature." Salge, 411 F.3d 178, 187. In the instant matter releasing the Plaintiff's email to the public would not inform the public of anything aside from the Plaintiff' displeasure with Andy Kopplin's performance on the board.

Based on the allegations of the numerous amended complaints, this Court finds that this communication constitutes speech that was undertaken by the Plaintiff during the course of preforming her job and is not of public concern. Consequently, Plaintiff cannot establish a prima facie case for First Amendment retaliation and her claim should be dismissed.

### B. TITLE VII RETALIATION CLAIMS

In the Fifth Circuit a prima facie case of retaliation requires that a plaintiff must show that "(1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).

In order to satisfy the first element of the prima facie case the Plaintiff must demonstrate that she "opposed any practice made an unlawful employment practice by this subchapter" 42 U.S.C. § 2000e-3(a). In order to satisfy this "opposition clause" the Plaintiff must demonstrate that she reasonably believed that the OPCD was engaging in unlawful employment practices. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427-428 (5th Cir. 2000).

Title VII protects employees from discrimination on the basis of their sex. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 78 (1998). The Supreme Court has explained, "[t]he critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale*, 523 U.S. 75, 80. In the instant matter Plaintiff alleges same-sex harassment from Jeanne Hobson. The Supreme Court has outlined three approaches to evaluate whether an alleged same sex harasser's conduct constitutes sexual discrimination. *La Day v. Catalyst Tech., Inc.,* 302 F.3d 474, 478 (5th Cir. 2002). The Plaintiff may establish a prima facie case by demonstrating that Ms. Hobson (1) made explicit or implicit proposals of sexual activity and provide credible evidence that Ms. Hobson was homosexual; (2) that Ms. Hobson was motived by general hostility to the presence of members of the same sex; or (3) demonstrate through comparative evidence that Ms. Hobson treated members of both sexes different in a mixed-sex

workplace. *La Day,* 302 F.3d 474, 478. Nonetheless, these are not exhaustive approaches to determining the presence of same sex harassment. *EEOC v. Boh Bros. Constr.* Co., L.L.C., 731 F.3d 444, 455-456 (5th Cir. 2013).

In "Plaintiff's Third Supplemental and Amending Complaint" (Rec. Doc. 29) she fleshes out various allegations regarding Ms. Hobson's alleged wrongful conduct. There are four general allegations that form the basis of Plaintiff's Title VII sexual harassment retaliation claim. First, Plaintiff alleges that one day during lunch Ms. Hobson approached her and talked about a man she had met on an online dating website and discussed her sexual behavior with the man (Rec. Doc. 29). Plaintiff stated that during Ms. Hobson's narrative she got up from the table and went into her office and closed the door in order to discontinue the conversation (Rec. Doc. 29). Second, Plaintiff alleges that Ms. Hobson attempted to show her various photos of additional men who were her sexual partners (Rec. Doc. 29). Third, Ms. Hobson came into the Plaintiff's office and communicated that she had sex with a man during her lunch hour (Rec. Doc. 29). Finally, Plaintiff discussed Ms. Hobson's comments with another co-worker and learned of other sexual activities that Ms. Hobson had been sharing with other employees (Rec. Doc. 29).

All of the instances that plaintiff alleges creates a sexually hostile environment do not constitute sexual harassment in a

legally cognizable manner under Supreme Court and Fifth Circuit precedent. First, Plaintiff does not allege that Ms. Hobson propositioned her explicitly or implicitly. Furthermore, all of her encounters are heterosexual in nature and therefore no indication exists that Ms. Hobson's conduct satisfies the first approach. Second, there is no allegation that Ms. Hobson's relationship comments are made because she feels hostility to other women in the workplace. Finally, there is no comparative evidence to demonstrate that Ms. Hobson does not share these narratives with male colleagues in the office in a similar fashion.

Even if Ms. Hobson's comments were inappropriate or made the Plaintiff feel uncomfortable, the Supreme Court has explained, "[t]he prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the conditions of the victim's employment. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview." *Oncale*, 523 U.S. at 81 (*internal quotations omitted*).

Furthermore, as the Fifth Circuit has explained, "[t]o be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile or abusive, and subjectively offensive, meaning that the victim

11

perceived it to be so. This Court must look at the totality of the circumstances when determining whether an environment is hostile or abusive. The Court may consider factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Barnett v. Boeing Co.*, 306 Fed. Appx. 875, 879 (5th Cir. 2009) (*internal quotations and citations omitted*).

There are no allegations that Ms. Hobson committed any actions that would be so offensive as to alter the conditions of Plaintiff's employment. Ms. Hobson did not show the Plaintiff any nude videos or images of her paramours. The discussions of Ms. Hobson's romantic life may have made the Plaintiff uncomfortable but does not give rise to a reasonable person feeling that they are in a sexually hostile work environment. The Plaintiff's contention that her subjective offense alone can establish a prima facie case for a Title VII retaliation claim does not comport with the controlling case law. Moreover, the Fifth Circuit has held in a more egregious case that harassment was not sufficiently severe or pervasive to create an objectively hostile or abusive work environment. *Gibson v. Potter*, 264 Fed. Appx. 397, 400 (5th Cir. 2008). In *Gibson*, the Fifth Circuit held that when a Plaintiff's supervisor grabbed her buttocks and made suggestive comments it was not sufficiently severe or pervasive enough to create an

12

objectively hostile work environment. 264 Fed. Appx. 397, 400. The facts of the instant matter are nowhere as severe. It is not reasonable that the Plaintiff believed that Ms. Hobson's romantic commentary created a sexually hostile work environment in a way that is actionable under Title VII. Plaintiff's Title VII retaliation claims should be dismissed given that she cannot establish a prima facie case.

**C. LOUISIANA WHISTLEBLOWER STATUTE CLAIMS**

"The Whistleblower Statute provides protection to employees against reprisal from employers for reporting or refusing to participate in illegal work practices." *Accardo v. La. Health Servs. & Indem. Co.*, 943 So. 2d 381, 383 (La.App. 1 Cir. 2006). Furthermore, under the Louisiana Whistleblower Statute La. R.S. 23: 967 the Plaintiff must prove an actual violation of state law. *Accardo*, 943 So. 2d 381, 383. Here, the Plaintiff's claim is based on her allegation that she reported Ms. Hobson's behavior to Director Gordon and was subsequently fired as a result. Plaintiff would have to plead facts that demonstrate that Ms. Hobson's behavior constituted employment discrimination under Louisiana law on the basis of sex. However because the Louisiana "statute is similar in scope to the federal anti-discrimination prohibitions in Title VII of the Civil Rights Act of 1964, Louisiana courts have routinely looked to the federal jurisprudence for guidance in determining whether a hostile work-environment claim based on

sexual harassment has been asserted under LSA-R.S. 23:332(A)." *Assamad v. Square*, 993 So. 2d 644, 648 (La.App. 1 Cir. 2008). If Ms. Hobson's actions do not lead to legally cognizable sexual harassment claims under federal law, the same is true for Louisiana state law. The Plaintiff has not alleged facts that demonstrate a violation of state law, a requirement for a valid Louisiana Whistleblower claim. The Court therefore finds that this claim should similarly be dismissed.

New Orleans, Louisiana, this 5th day of June, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE