# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-30490

United States Court of Appeals
Fifth Circuit
**FILED**
February 15, 2018
Lyle W. Cayce
Clerk

FRITH MALIN,

      Plaintiff–Appellant,

v.

ORLEANS PARISH COMMUNICATIONS DISTRICT,

      Defendant–Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CV-16465

Before REAVLEY, SMITH, and OWEN, Circuit Judges.

PER CURIAM:*

    Frith Malin was Deputy Director of the Orleans Parrish Communications District (OPCD). She alleges that the Human Resources Manager of the OPCD, a female, created a sexually hostile work environment and that Malin's complaints to superiors were ignored. Malin's employment with OPCD was terminated when, in response to an email from OPCD's Executive Director to all employees, Malin criticized a departing member of

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Case: 17-30490    Document: 00514379278    Page: 2    Date Filed: 03/09/2018
Case 2:16-cv-16465-ILRL-KWR    Document 37-1    Filed 03/09/18    Page 2 of 16

No. 17-30490

the board of directors and inadvertently copied all of her co-workers. Malin was terminated for the dissemination of this email upon the recommendation of the human resources manager whom she had accused of creating a sexually hostile work environment. Malin sued OPCD under 42 U.S.C. § 1983, contending that the contents of her email are protected speech under the First Amendment, and she sued under Title VII of the Civil Rights Act of 1964 and Louisiana's whistleblower statute. The district court dismissed her complaint for failure to state a claim. We affirm.

# I

Frith Malin had been employed by OPCD, which provides 9-1-1 services, for eight years and was its deputy director when she was terminated. We recount the facts alleged in her fourth and last complaint and accept them as true for purposes of this appeal.

OPCD's Executive Director, Stephen Gordon, emailed all OPCD employees to inform them that Andy Kopplin, a member of the OPCD board of directors, had been named CEO of the Greater New Orleans Foundation (GNOF) and as a result, would not remain a member of OPCD's board. Malin, intending to reply only to Gordon, inadvertently replied "to all" with an email that said:

> I'm sure he will do just as good a job bleeding all these funds dry, just as he has done with the City. I'm willing to bet he starts charging a higher admin/maintenance fee to the entities that have funds there. I normally donate to Franklin via this fund, but won't do that again.

According to her complaint, Malin frequently received emails from co-workers, including Gordon, complaining about and opposing various OPCD policies and actions. Malin had also "consistently voiced her concerns to her supervisor, some of her co-employees, and to the OPCD Board concerning her

Case: 17-30490   Document: 00514379278   Page: 3   Date Filed: 03/09/2018
Case 2:16-cv-16465-ILRL-KWR   Document 37-1   Filed 03/09/18   Page 3 of 16

No. 17-30490

opposition to City of New Orleans/OPCD consolidation issues, and in particular as to how OPCD funds were being used."

Three days after sending the email that was critical of Kopplin, Malin was suspended pending an internal investigation by OPCD Human Resources Manager Jeanne Hobson. Hobson concluded that Malin's email violated the OPCD Conduct Policy and recommended that she be terminated. Malin had never before been disciplined. Two weeks after Hobson submitted her report, OPCD terminated Malin's employment.

About four months before she sent the offending email, Malin had reported Hobson for graphically describing sexual encounters. Malin's complaint describes six incidents. In four of them, Hobson communicated directly with Malin. In the first, Hobson approached Malin during lunch, displayed a picture of a man with his head on a pillow, told Malin she had met him on Tinder, that they had sex twice that morning before 7:00. When Hobson attempted to describe in detail a sexual act in which she had engaged with the man, Malin was humiliated and embarrassed. She left the lunch table, went to her office and closed the door. Within a few days later, Hobson again attempted to show Malin pictures of sexual partners and told Malin the names of the "hookup sites she was using." When Hobson attempted to relate details of the sexual activities, Malin made an excuse to walk away, kept her door closed, and pretended to be on the phone when Hobson approached her office.

In the third incident, Hobson entered Malin's office and related that she had sex during her lunch break and described the details of the sexual activity. Malin told Hobson "vehemently to stop." The fourth incident occurred about a month after the first. Hobson told Malin she had called in sick because she was with a male sexual partner.

The other two incidents in Malin's complaint recount what she was told by others a month after the first time Hobson shared her sexual exploits with

3

Case: 17-30490   Document: 00514379278   Page: 4   Date Filed: 03/09/2018
Case 2:16-cv-16465-ILRL-KWR   Document 37-1   Filed 03/09/18   Page 4 of 16

No. 17-30490

Malin. When Malin told another employee about Hobson's actions, that employee told Malin that another employee "had also complained that Hobson was communicating to her the lurid details of her sexual life." Hobson subsequently learned that Hobson related to two female 9-1-1 dispatchers that a man with whom she had sex asked her to have sex with his best friend while he filmed it. She agreed, and because the filming of first act of intercourse was blurry, a second act ensued and captured on film.

Malin complained to Gordon, her supervisor, that Hobson's actions constituted sexual harassment and that Malin and other female employees "had been essentially captive victims of this salacious and inappropriate behavior in the workplace." Hobson was never disciplined and was aware that Malin had reported her.

After she was terminated, Malin brought suit against OPCD under § 1983 alleging a violation of her First Amendment rights.[1] Malin additionally claimed that, in violation of Title VII of the Civil Rights Act of 1964,[2] and Louisiana's whistleblower statute,[3] OPCD had retaliated against her for reporting Hobson. The district court granted OPCD's motion to dismiss all claims. The court held that Malin was not protected by the First Amendment because she sent her email about Kopplin as a public employee, not a citizen, and alternatively, that the content of the email was not a matter of public concern. The court dismissed Malin's Title VII claim, concluding that she did not participate in a Title VII protected activity because a reasonable person would not believe that Hobson's commentary created a sexually hostile work environment. Because Louisiana courts look to federal cases interpreting Title

---

[1] *See* 42 U.S.C. § 1983.
[2] 42 U.S.C. § 2000e-3.
[3] LA. REV. STAT. ANN. § 23:967 (2017).

4

No. 17-30490

VII when interpreting La. R.S. 23:967, the district court dismissed Malin's state law claim for the same reason. Malin appeals.

## II

To establish a First Amendment retaliation claim against a state actor under § 1983, a plaintiff must prove that (1) she suffered an adverse employment decision, (2) she "spoke as a citizen on a matter of public concern," (3) her interest in speaking outweighed the state actor's interest in workplace efficiency, and (4) her protected speech motivated the adverse decision.[4] The parties do not dispute for purposes of this appeal that Malin's speech motivated an adverse employment decision. Their focus is on whether she spoke as a citizen and whether her email addressed matters of public concern.[5]

The Supreme Court has "identif[ied] two inquiries to guide interpretation of the constitutional protections accorded to public employee speech."[6] The first inquiry "requires determining whether the employee spoke as a citizen on a matter of public concern."[7] Courts are instructed that "[i]f the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech."[8] But "[i]f the answer is yes, then the possibility of a First Amendment claim arises."[9]

If the employee spoke as a citizen on a matter of public concern, then the second of the "two inquiries" is "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public."[10] Courts must engage in "particularized

---

[4] *Gibson v. Kilpatrick*, 838 F.3d 476, 481 (5th Cir. 2016).
[5] *See Lane v. Franks*, 134 S. Ct. 2369, 2378-80 (2014) (evaluating separately whether a public employee spoke as a citizen and whether the speech was a matter of public concern).
[6] *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*

5

Case: 17-30490      Document: 00514379278      Page: 6      Date Filed: 03/09/2018
Case 2:16-cv-16465-ILRL-KWR   Document 37-1   Filed 03/09/18   Page 6 of 16

No. 17-30490

balancing" to "reach the most appropriate possible balance of competing interests," which "is difficult."[11]

In the current procedural posture of the present case, only the first inquiry is at issue. Were we to conclude that Malin spoke as a citizen on a matter of public concern, we would not engage in the second inquiry, which is the balancing analysis, at this stage. We would remand to the district court for further proceedings. Our court said in *Burnside v. Kaelin* that "[i]n stating a prima facie case at the motion-to-dismiss stage of a case, there is a rebuttable presumption that no balancing is required to state a claim."[12] A procedure that *Burnside* said may be available to an employer to "quickly overcome the presumption"[13] is not implicated in this appeal.

"The ultimate issue—whether the speech is protected—is a question of law."[14] To survive dismissal, the complaint must contain enough facts to "state a claim to relief that is plausible on its face."[15] We look to the facts alleged in Malin's complaint; we do not accept as true legal conclusions and "[t]hreadbare recitals of the elements of a cause of action."[16]

## A

It is well-settled that "public employees do not surrender all their First Amendment rights by reason of their employment."[17] Because "government

---

[11] *Connick v. Myers*, 461 U.S. 138, 150 (1983).
[12] 773 F.3d 624, 628 (5th Cir. 2014) (reasoning that "[t]he rebuttable presumption applies because reasonable inferences drawn from a complaint, obviously drafted by the aggrieved employee, will generally lead to a plausible conclusion that the employee's interest in commenting on matters of public concern outweighs the employer's interest in workplace efficiency" and that "[t]he presumption also adheres because a plaintiff-employee is not in a position to plead defensive reasons for its employment decisions").
[13] *Id.*
[14] *Rankin v. McPherson*, 483 U.S. 378, 386 n.9 (1987) (citing *Connick*, 461 U.S. at 148 n.7).
[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[16] *Iqbal*, 556 U.S. at 678.
[17] *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).

Case: 17-30490 Document: 00514379278 Page: 7 Date Filed: 03/09/2018
Case 2:16-cv-16465-ILRL-KWR Document 37-1 Filed 03/09/18 Page 7 of 16

No. 17-30490

employees are often in the best position to know what ails the agencies for which they work"[18] their speech may be protected even if it "concerns information related to or learned through public employment."[19] However, "'Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services.'"[20] Therefore, the "Constitution does not insulate [speech made pursuant to official duties] from employer discipline."[21] For example, while "making a public statement, discussing politics with a coworker, [or] writing a letter to newspapers" [22] are "examples of prototypical protected speech,"[23] a prosecutor's internal memo about a case he was assigned to analyze as part of his normal job responsibilities was not citizen speech.[24]

The district court based its ruling that Malin's email contained employee speech primarily on the fact that it was sent only to supervisors and co-workers from Malin's work email address and the information in the email was not shared with the public. However, the Supreme Court has made clear that the fact that an employee "expressed his views inside his office, rather than publicly, is not dispositive"[25] and "that First Amendment protection applies when a public employee arranges to communicate privately with his employer rather than to express his views publicly."[26]

---

[18] *Lane*, 134 S. Ct. at 2377 (quoting *Waters v. Churchill*, 511 U.S. 661, 674 (1994) (plurality opinion)).
[19] *Id.*
[20] *Id.* (quoting *Garcetti*, 547 U.S. at 418).
[21] *Id.* at 2378.
[22] *Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008) (quoting *Spiegla v. Hull*, 481 F.3d 961, 967 (7th Cir. 2007) (citing *Garcetti*, 547 U.S. at 421)) (brackets omitted).
[23] *Id.*
[24] *Garcetti*, 547 U.S. at 421-22 (2006).
[25] *Id.* at 420.
[26] *Connick v. Myers*, 461 U.S. 138, 146 (1983).

7

No. 17-30490

OPCD contends that Malin sent the email as an employee because she often needed to read and respond to email as part of her job, so the content of her email is "irrelevant." Although the medium of speech is relevant to determining whether a public employee is speaking as a citizen,[27] the proposition that an email, regardless of content, is employee speech because responding to email is part of an employee's job is far too sweeping. "Many citizens do much of their talking inside their respective workplaces,"[28] and employees undoubtedly communicate as citizens in workplace emails.[29]

To resolve whether speech is that of a citizen or an employee, courts determine "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."[30] A "formal job description is not dispositive" to this determination, "nor is the fact that the speech relates tangentially to the subject matter of one's employment."[31] "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."[32]

In some circumstances, the nature of the communication reveals whether the public employee spoke as a citizen. In *Lane v. Franks*, the

---

[27] *See, e.g.*, *Lane v. Franks*, 134 S. Ct. 2369, 2379-80 (2014).
[28] *Garcetti*, 547 U.S. at 420.
[29] *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 191 (5th Cir. 2005) (rejecting the argument that because a secretary's job duties included answering the phone her telephone conversation was *per se* employee speech, reasoning that such a rule "would undermine First Amendment protection for employees who speak *at* work *while* working"); *see also Garcetti*, 547 U.S. at 420-21 ("[I]t would not serve the goal of treating public employees like any member of the general public, to hold that all speech within the office is automatically exposed to restriction.") (internal quotations and citations omitted).
[30] *Lane*, 134 S. Ct. at 2379.
[31] *Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008) (citing *Garcetti*, 547 U.S. at 420-21); *see also Lane*, 134 S. Ct. at 2379 ("[T]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech.").
[32] *Lane*, 134 S. Ct. at 2379.

8

Supreme Court held that a public employee's in-court testimony was citizen speech because his ordinary job responsibilities did not involve testifying in court.[33] Similarly, in *Davis v. McKinney*, our court held that an internal auditor's written complaints that management failed to discipline employees for viewing pornography at work were employee speech because they "related to her work within the internal audit department and to her core job description," but her criticism of the number and pay of vice presidents in the organization was citizen speech because "[t]here was no financial component to [her] position."[34]

Just as the *Davis* court compared the auditor's job duties to the content of her letter to determine whether she spoke as a citizen or employee,[35] we evaluate whether Malin sent the offending email in the course of performing her job. Malin criticized Kopplin for wasting city funds, opined that he would increase fees to entities that maintained funds at GNOF, which would result in "bleeding those funds dry," and resolved not to donate money to GNOF while Kopplin was CEO. Malin's job responsibilities almost certainly did not include expressing her personal approach to charitable giving, nor did they require her to evaluate the performance of OPCD's board of directors or comment on the departure of OPCD personnel. However, Malin's complaints about OPCD's funding policies under Kopplin were broadly related to her employment at OPCD and likely based on information she acquired on the job. It is unclear whether this aspect of the email was in the course of her duties as deputy

---

[33] *Id.* at 2379-80.
[34] *Davis*, 518 F.3d at 315.
[35] *Id.*; *see also Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007) (per curiam) (holding the that a high school athletic director who wrote memoranda to supervisors complaining about the lack of funds for athletics spoke as an employee because such funds were integral to his job).

9

Case: 17-30490 Document: 00514379278 Page: 10 Date Filed: 03/09/2018
Case 2:16-cv-16465-ILRL-KWR Document 37-1 Filed 03/09/18 Page 10 of 16

No. 17-30490

district director. But at least some of the speech contained in Malin's email did not arise out of her normal job functions.

Based on the record before us, Malin spoke, at least in part, as a citizen.

## B

Public employees speak on matters of public concern when their communications "can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'"[36] "Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record."[37] The Supreme Court explained in *Connick* that "[t]o presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case."[38]

In *Connick*, an employee had circulated a questionnaire to her co-workers seeking their views on various aspects of the district attorney's office and their level of confidence and trust in the district attorney.[39] The Court reasoned that some of the questions in the questionnaire did not "seek to bring to light actual or potential wrongdoing or breach of public trust on the part of [the district attorney] and others."[40] With regard to those questions, the Court observed that "[i]ndeed, the questionnaire, if released to the public, would convey no information at all other than the fact that a single employee is upset with the status quo."[41] That is the case here.

---

[36] *Gibson v. Kilpatrick*, 838 F.3d 476, 482 (5th Cir. 2016) (quoting *Lane*, 134 S. Ct. at 2380 (citation omitted)).
[37] *Connick v. Myers*, 461 U.S. 138, 147-48 (1983).
[38] *Id.* at 149.
[39] *Id.* at 141-42.
[40] *Id.* at 148.
[41] *Id.*

10

No. 17-30490

If released to the public, Malin's email would not bring to light actual or potential wrongdoing by Kopplin. It conveys "no information at all" other than Malin's opinion that Kopplin had not been as fiscally conservative as Malin thought he should have been, her speculation that he would charge "higher" fees than GNOF was then charging, and her personal decision to no longer donate through GNOF. The First Amendment does not protect this speech. The Supreme Court reasoned in *Connick* that "the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs."[42] The district court correctly discerned that releasing Malin's email to the public would not provide any information other than her displeasure with Kopplin's performance as a board member.

Public employee speech may touch on matters of public concern "if it does not involve solely personal matters or strictly a discussion of management policies that is only interesting to the public by virtue of a manager's status as an arm of government."[43] In *Pickering v. Board of Education*,[44] for example, teachers who criticized the school board's allocation of school funds between academics and athletics spoke on a matter of public concern.[45] By contrast, when a police officer's post on the mayor's Facebook page criticized the police chief's leadership, we held that even though the post began by addressing matters of public importance—whether to send officers to the funeral of a fallen officer in a nearby town—it devolved into a "rant" about the police chief and was therefore "akin to an internal grievance."[46]

---

[42] *Id.* at 149.
[43] *Branton v. City of Dallas*, 272 F.3d 730, 740 (5th Cir. 2001) (citing *Connick*, 461 U.S. at 147).
[44] 391 U.S. 563 (1968).
[45] *Id.* at 571.
[46] *Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 737-38 (5th Cir. 2015) (characterizing officer's attack on police chief's leadership and request that the chief "get the hell out of the way" and "just go" as an internal grievance).

11

No. 17-30490

According to her complaint, Malin had "consistently voiced her . . . opposition to City of New Orleans/OPCD consolidation issues, and in particular as to how OPCD funds were being used." Her email commented only obliquely as to how OPCD funds had been used. Malin's personal opinions and derogatory comments about Kopplin are more in the nature of an internal grievance.

The form of Malin's speech—an email to colleagues in response to an internal personnel announcement—weighs against its pertaining to a matter of public concern. This court has held that when a public employee's speech reflects a "choice to inform someone outside [the workplace]" the speech is more likely be a matter of public concern.[47] Conversely, a police officer's private diary entries were not matters of public concern at least in part because there was "no effort to communicate the contents of the notebook to the public."[48] While an employee's choice to "communicate privately with his employer rather than to spread his views before the public" is certainly not dispositive,[49] it is relevant to determining whether the speech is a matter of public concern.[50]

Malin sent the email at issue only to her colleagues at OPCD. Based on the facts in her complaint, she made no attempt to send the email or disseminate its message outside the workplace. To the contrary, Malin attests that she intended the email for an audience of one—Gordon, her supervisor— and that it reached her co-workers inadvertently. Although Malin's email

---

[47] *Modica v. Taylor*, 465 F.3d 174, 181 (5th Cir. 2006).
[48] *Terrell v. Univ. of Tex. Sys. Police*, 792 F.2d 1360, 1362-63 (5th Cir. 1986).
[49] *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415-16 (1979); *see also Benningfield v. City of Houston*, 157 F.3d 369, 375 (5th Cir. 1998) ("The fact that the Plaintiffs chose to file internal grievances rather than publicize their complaints is not dispositive.").
[50] *See Modica*, 465 F.3d at 181; *Dodds v. Childers*, 933 F.2d 271, 274 (5th Cir. 1991); *Thompson v. City of Starkville, Miss.*, 901 F.2d 456, 466 (5th Cir. 1990) ("[T]he publicization of the speech . . . is simply another factor to be weighed in analyzing whether [the] alleged speech addressed matters of public concern.").

12

No. 17-30490

expressed her views up the chain of command, and inadvertently, to all OPCD employees, the email was not an attempt to change or influence department policies, since Kopplin was leaving OPCD, nor was it an attempt to cabin Kopplin's ability to manage GNOF. Malin's speech amounted only to an airing of her personal opinions about Kopplin.

The district court properly dismissed Malin's First Amendment claim.

### III

Malin also alleges that OPCD fired her in retaliation for her complaints that Hobson was detailing sexual encounters to Malin and other female employees. To state a claim for retaliation, a plaintiff must show "(1) that she engaged in activity protected by [T]itle VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action."[51]

Under Title VII's "participation clause," a plaintiff may show that an adverse employment decision resulted after she made a charge, testified, assisted, or participated in an EEOC investigation, proceeding, or hearing.[52] Under the "opposition clause," the plaintiff must allege that she "opposed any practice made an unlawful employment practice" by Title VII.[53] Malin contends not that her employment was terminated because she cooperated with the EEOC, but rather that OPCD ended her employment for voicing opposition to Hobson's alleged sex-themed chronicles. To succeed, Malin must prove that she reasonably believed that Hobson's conduct was an unlawful employment practice within the meaning of Title VII[54]

---

[51] *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 483 (5th Cir. 2002) (quoting *Long v. Easfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)).

[52] 42 U.S.C. § 2000e-3(a).

[53] *Id.*; *see also Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427-28 (5th Cir. 2000).

[54] *Byers*, 209 F.3d at 428.

13

No. 17-30490

Title VII's prohibition on sex discrimination includes "[t]he creation of a hostile work environment through harassment."[55] Discriminatory behavior creates a hostile workplace only when it is "so objectively offensive as to alter the 'conditions' of the victim's employment" and when the victim finds it subjectively offensive to the same degree.[56] "Conduct that is not severe or pervasive enough to create . . . an environment that a reasonable person would find hostile or abusive" is insufficient to give rise to a hostile-work-environment claim.[57] In judging whether harassment is objectively severe or pervasive enough to create a hostile environment, we consider "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[58] In doing so, we are mindful that Title VII "requires neither asexuality nor androgyny in the workplace" and "does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex."[59]

Because her claim is for retaliation, rather than harassment, Malin need only allege enough facts to plausibly state that a reasonable person would believe that Hobson's conduct was subjectively and objectively sufficient to alter the terms of Malin's employment.[60] The factual allegations in Malin's

---

[55] *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 452 (5th Cir. 2013) (en banc) (quoting *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2455 (2013) (GINSBURG, J., dissenting)).

[56] *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998); *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 482 (5th Cir. 2002) (quoting *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 (5th Cir.1998)).

[57] *Oncale*, 523 U.S. at 81 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

[58] *La Day*, 302 F.3d at 482 (quoting *Butler*, 161 F.3d at 269).

[59] *Oncale*, 523 U.S. at 81 (stating that Title VII is not a "general civility code.").

[60] *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000).

14

Case: 17-30490    Document: 00514379278    Page: 15    Date Filed: 03/09/2018
Case 2:16-cv-16465-ILRL-KWR    Document 37-1    Filed 03/09/18    Page 15 of 16

No. 17-30490

complaint fall short of plausibly stating that a reasonable person could believe that Hobson's descriptions of her sex life were pervasive or severe.

According to Malin, Hobson recounted details of her sex life at work six times. Malin was present on four of those occasions and heard about the others from co-workers. These interactions—spread across a two-month period—do not provide a reasonable basis to conclude that Malin was the victim of pervasive harassment. Nor do they plausibly suggest that Hobson's remarks were so severe as to alter the conditions of Malin's employment. Hobson twice described specific sexual acts, said she had sex during lunch, and informed Malin that she called in sick because she was with a sexual partner. Although Hobson's accounts were unprofessional, unwelcome and distasteful, Malin has not alleged that Hobson interfered with her job responsibilities, nor that she felt physically threatened by Hobson. On these facts, it is not plausible that a reasonable person would believe Hobson's conduct was objectively pervasive or severe. Because Malin has not plausibly alleged that a reasonable person would believe that Hobson's sexual commentary created a hostile work environment, her retaliation claim fails.

## IV

Malin contends that OPCD's decision to terminate her violates Louisiana's whistleblower statute.[61] To state a claim under that statute, an employee must show that his employer retaliated for reporting an actual violation of law.[62] In this case, Malin claims that OPCD terminated her employment for reporting that Hobson had violated the state statue prohibiting sexual harassment.[63] Louisiana courts look to federal jurisprudence to decide hostile-work-environment claims under La.

---

[61] LA. REV. STAT. ANN. § 23:967 (2017).
[62] *Id.*
[63] *See* LA. REV. STAT. ANN. § 23:332 (2017).

15

No. 17-30490

R.S. § 23:332.[64] Because Malin has failed to state a claim under Title VII, her state law claim fails as well.

\*   \*   \*

We AFFIRM the judgment of the district court.

---

[64] *Assamad v. Percy Square & Diamond Foods, LLC*, 993 So.2d 644, 648 (La. App. 1 Cir. 2008).

16